IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PIETRO BIESER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:04CV00891AGF |
| | ) |
| MICHAEL KEMNA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the pro se petition of Missouri state prisoner Pietro Bieser for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, habeas relief shall be denied.

On March 7, 1996, Petitioner was found guilty by a jury of 12 sexual offenses (one count of rape, child under 14; four counts of sodomy, child under 14; two counts of first-degree statutory rape; three counts of first-degree statutory sodomy; one count of forcible rape; and one count of forcible sodomy). The crimes were perpetrated against Petitioner's 11-year old grandniece (Yolanda Jones) and Jones's 11-year old and 17-year old friends (Angela Wilson and Rhonda Day, respectively) over a period of several months in 1994 and 1995. Petitioner was sentenced to multiple concurrent and consecutive terms of imprisonment, including life imprisonment for the forcible rape. On

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

1

June 24, 1997, the convictions and sentences were affirmed on direct appeal. Petitioner filed a timely motion for post-conviction relief. Thereafter, appointed counsel filed an amended motion. Following an evidentiary hearing, the motion was denied, and this denial was affirmed on appeal on September 23, 2003.

In his timely petition before this Court, Petitioner claims that his constitutional rights were violated in the following ways:

> 1. The victims were coerced by Jones's mother, the police, or each other (to make statements against Petitioner);
>
> 2. The prosecutor withheld information of Petitioner's physical condition, that the police admitted that they had coerced the victims, and that Jones had previously maintained that her abuser was someone else;
>
> 3. Defense counsel was ineffective for failing to introduce evidence of Petitioner's medical condition during the period in which the crimes were committed, failing to call Petitioner's family members and friends as alibi witnesses, and failing to provide a "supported" defense;
>
> 4. Direct appeal counsel was ineffective for not raising all of the above issues on appeal; and

Respondent argues that review of Petitioner's claims, except with respect to the ineffective assistance of defense counsel claims, is procedurally barred, and that habeas relief should be denied as to the preserved claims because the state courts' adjudication of them was factually and legally reasonable.

## BACKGROUND

**Indictment and Trial**

On June 1, 1995, an indictment was issued against Petitioner, charging statutory rape of Jones (Count I); statutory sodomy of Jones (Count II); statutory rape of Wilson

2

(Count III); statutory sodomy of Wilson (Count IV); and forcible rape of Day (Count V). The indictment contained three additional counts "In the alternative to Count V:" statutory rape of Day (Count VI); forcible sodomy of Day (Count VII); and statutory sodomy of Day (Count VIII). All of the offenses were alleged to have occurred during certain periods of time from March 1 to December 31, 1994, rather than on specific dates. Resp. Ex. J at 4-6. On August 31, 1995, defense counsel moved to sever the counts into three groups, each involving a different victim. This motion was continued by the court pending the completion of depositions.

On November 3, 1995, a new 12-count indictment was issued against Petitioner, under a new case number. Counts I through VI of the new indictment involved sexual offenses against Jones; Counts VII through X involved offenses against Wilson; and Counts XI and XII involved offenses against Day. Again the crimes were alleged to have occurred during certain periods of time, which were slightly different from those in the initial indictment and which covered the period from September 1, 1994, to March 15, 1995. Resp. Ex. B at 5-8.

On the morning of March 4, 1996, the day trial began, the first indictment was nolle prossed for the reason that a new indictment had been filed, and Petitioner was arraigned on the new indictment. Resp. Ex. J at 9, Resp. Ex. A3 at 20-33. The evidence at trial established that sometime in 1992 or in 1993, Petitioner was injured in a motor vehicle accident. In 1994 and early 1995, Petitioner lived with his sister in St. Louis, so that he could more easily get to the Veterans' Administration hospital in St. Louis for treatment and medications for his injuries. His wife and his two step-daughters were

3

living at the time with the daughter of Petitioner and his wife about 65 miles away. Petitioner's sister was Jones's maternal grandmother and Jones was also living with Petitioner's sister at the time, having been removed from her mother's custody. Other family members were also living at the house. In February 1995, Jones was returned to the custody of her mother who was then living with an individual named Joseph Hurt. In April 1995, Jones told her grandmother that Hurt was molesting her. The Missouri Division of Family Services was notified by another relative, and Jones was placed in emergency protective custody where she was interviewed by police officer Sheldon Wight. When contacted by Officer Wight, Jones's mother told him that it was Petitioner who had molested Jones. Officer Wight asked both Jones and Petitioner about this accusation, and both denied it.

Sometime later, Officer Wight heard Petitioner's name come up in connection with a different sexual abuse case under investigation by another officer – a case in which Wilson was the victim. Officer Wight interviewed Wilson, who he learned was Jones's friend and who told him that Petitioner had been molesting her, Jones, and Day at Petitioner's sister's house. Officer Wight took Wilson and Jones's mother to where Jones was living, and Officer Wight told Jones what Wilson had told him about Petitioner. Jones cried and then described specific acts of sexual abuse by Petitioner. Day was also contacted by Officer Wight, and after she was told about Jones's and Wilson's statements, she too described being sexually abused by Petitioner.

Each of the three victims testified at trial as to Petitioner's crimes. Some of the crimes were performed when all three of the victims were together with Petitioner in his

room. There was testimony that some of the crimes were committed on weekends. Wilson testified that the second time that Petitioner molested her was when she slept over with Jones on a weekend, and Jones testified that Wilson often slept over on weekends, "either for one night or the whole weekend," during the relevant time period and that Petitioner would engage them in sexual activities on those occasions. Resp. Ex. A1 at 127. Petitioner's sister testified that when Petitioner told her about the accusations of the three victims, she was upset and asked him how it had happened, to which he responded: "It just happened."

Petitioner's wife testified on his behalf that for the past two years he had been unable to perform sexually due to the medications he was taking. On cross-examination, Petitioner's wife testified that during the relevant time period, "I was always home on weekends and [Petitioner] would come over to our daughter's house." Tr. at 244.

Petitioner testified, denying that he ever sexually molested any of the victims. He testified that in the fall of 1994, his physical condition after his motor vehicle accident worsened, and he was put on heavy pain medication, and nitroglycerin patches as well. Petitioner's defense theory was that the victims lied about him having sexually abused them, under pressure from the police and Jones's mother. The trial court excluded the expert testimony of psychologist Ann Duncan, Ph.D., about the suggestive and coercive nature of Officer Wight's interviewing techniques.

Prior to instructing the jury, the court held a conference in chambers with counsel, at which defense counsel argued that the counts involving Day had been "improperly joined as to our previous motion." The court stated that in light of the interrelatedness of

5

the offenses, there was "almost no way you could sever these cases. Your motion is without question denied." Id. at 292-94.

**Direct Appeal and Motion to Recall the Mandate**

Petitioner raised three points in his direct appeal. He argued that his right to a fair trial was violated by the trial court's (1) exclusion of Dr. Duncan's testimony, (2) denial of Petitioner's motion for acquittal of the sodomy and rape counts involving Day, because the State did not prove forcible compulsion with respect to either count, and (3) disallowance of defense counsel's attempt to cross-examine Day fully with evidence that she told conflicting stories at trial and before the grand jury. Resp. Ex. C. On June 24, 1997, the Missouri Court of Appeals rejected all three grounds. Resp. Ex. E.

On December 23, 1998, Petitioner filed a pro se motion to recall the mandate. He argued that appellate counsel was ineffective for not raising on appeal trial counsel's ineffectiveness in (1) not calling certain witnesses to testify about the coercive and suggestive interviewing techniques used with the victims, and (2) not informing Petitioner of the new indictment until the morning of trial. Pet. Exs. at 13-16. On January 25, 1999, the Missouri Court of Appeals denied this motion, and informed Petitioner that any allegation of ineffective assistance of appellate counsel had to be raised in a "Rule 29.15 motion." Id. at 12.

**State Post-conviction Proceedings**

Petitioner filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on August 28, 2001, raising a multitude of claims. Resp. Ex. I at 3-19. On January 22, 1998, an amended motion was filed by appointed counsel,

claiming that defense counsel was ineffective in failing to take the following actions: (1) file a motion to sever the two counts involving Day from the other counts; (2) ask Petitioner's wife on direct examination about Petitioner's weekend visits during the relevant time period, testimony which he asserted would have contradicted the victims' testimony, especially that of Jones, that Petitioner molested them on weekends; (3) call six named witnesses to testify on Petitioner's behalf, each of whom was allegedly present at Petitioner's sister's house during the relevant time period and would testify that "nothing occurred" between Petitioner and the three victims; (4) introduce medical expert testimony and records showing that Petitioner's medical condition during the relevant time period precluded him from performing the crimes requiring him to maintain an erection; (5) challenge the sufficiency of the evidence to convict Petitioner of several counts involving crimes occurring between January 1 and March 15, 1995; (6) frame challenges to Petitioner's rights in constitutional terms; and (7) ask for a continuance after the new indictment adding/changing charges "was filed" the morning of trial. The amended motion also asserted a claim of ineffective assistance of appellate counsel for failing to raise on direct appeal the sufficiency-of-the-evidence claim. Petitioner raised as a separate due process claim, being forced to go to trial on charges for which he was arraigned the morning of trial. Id. at 20-29.

By order dated February 19, 1999, all but one claim -- defense counsel's failure to to call the six alibi witnesses -- were rejected based upon the existing record. Id. at 30-45. With respect to the claim regarding counsel's failure to elicit testimony from Petitioner's wife about Petitioner's weekend visits, the court reasoned that "[t]he fact that counsel for

[Petitioner] did not seek to develop this further on cross-examination is obvious, it would have been destructive to the theory of defense that Day consented and was not forcibly raped. Moreover, under the circumstances, [Petitioner's wife] likely could not give [Petitioner] more than a partial alibi if at all." The court further stated that Petitioner's wife

> did give the essence of the alibi testimony, albeit under cross-examination. The jury, if it believed [Petitioner's wife's] testimony, could have reasonably concluded that [Petitioner] was not in the same place as the victims at the time and on the days they say they were sexually involved with [Petitioner]. A subjective observation that developing this testimony on cross-examination would be more effective, does not mean that it was ineffective assistance of counsel not to do so. Many a lawyer has found that helpful evidence brought out by their opponent on direct-examination is much more credible and persuasive than if brought out on their own cross-examinations. [Petitioner] has no grounds for ineffective assistance of counsel simply because he would have preferred that his alibi evidence came out differently.

Id. at 34-35.

With respect to the claim that defense counsel was ineffective for failing to introduce evidence that Petitioner's medical condition rendered him impotent during the relevant time period, the trial court noted that evidence of Petitioner's impotency was put before the jury in the form of his wife's testimony that he was not able to perform sexually for the past two years. The court held that Petitioner was thus not prejudiced by counsel's failure to introduce medical expert testimony or records on this matter. The court further noted that impotency was not relevant to the sodomy charges, and that the Missouri Court of Appeals had held in State v. Ball, 733 S.W.2d 499, 501 (Mo. Ct. App. 1987), that impotency also did not preclude the crime of rape. Resp. Ex. I at 38-39.

8

The motion court decided "out of an abundance of caution," that an evidentiary hearing should be held so that Petitioner's trial counsel could explain why he did not call the six alibi witnesses. Such a hearing was held on November 30, 2001. Although in the February 19, 1999 order, the motion court specifically limited the hearing to the alibi witnesses issue, Petitioner's wife and his two step-daughters testified, as did Petitioner. Petitioner's trial counsel was not available to testify. Petitioner's wife and step-daughters testified that Petitioner came to the house they were living in during the relevant time period every weekend, arriving Friday night or, more often, early Saturday morning, and leaving to return to St. Louis on Sunday or Monday. Petitioner's wife testified that she told this to Petitioner's trial counsel prior to trial. Resp. Ex. H at 5-24.

Petitioner testified that he gave his trial counsel the names of six individuals who Petitioner stated, "were around me and what I was doing during" the relevant time period. Specifically, Petitioner thought that they could have testified that there was no hostility between Petitioner and Day. Petitioner did not know whether his counsel contacted these people. Petitioner also testified that when he was charged with the crimes, his health was so bad that he was more worried about that than about "these ridiculous charges," which were not true. He stated that at the time of the offenses, he had bad heart failure and serious physical injuries. Petitioner testified that he told his trial counsel that he visited his wife every weekend during the relevant time period, and that counsel was "supposed to" ask Petitioner's wife and two step-daughter's at trial about this. Petitioner also testified that counsel was aware of Petitioner's serious health problems, and that counsel told him that they were relevant to the charges and that he would bring them up at trial.

9

Id. at 26-36.

By order dated January 15, 2002, the state trial court addressed not only the claim regarding the failure to call the alibi witnesses, but also the claim that trial counsel was ineffective for failing to elicit testimony that Petitioner spent every weekend during the relevant time period with Petitioner's wife. On this latter claim, the court held that Petitioner's wife "could not have provided a defense during the entire period of time during which the sexual conduct occurred in that it could have occurred on Friday nights, and it appeared that at least some of it occurred on evenings . . . Sunday through Thursday." The court further found that Petitioner's wife was not "entirely credible" at the hearing, and failed to testify to the weekend visits when questioned on cross-examination about when she saw Petitioner while he was living at his sister's home. Resp. Ex. L at 24-25. The motion court believed that the claim with regard to the six named witnesses was abandoned by Petitioner's failure to present any evidence on it at the hearing, and further that Petitioner's "speculation about what the witnesses would have testified to would not have unqualifiedly provided a defense." Id. at 25.

On appeal from the denial of post-conviction relief, Petitioner argued that the trial court's ruling that Petitioner had filed a proper motion to sever was clearly erroneous, and that had counsel filed a proper motion, the result of the trial would have been different. Petitioner further asserted that the trial court erred in ruling that trial counsel was not ineffective for failing to elicit testimony from Petitioner's wife about the weekend visits, and for failing to introduce medical expert testimony and medical records establishing Petitioner's impotence. Petitioner argued that a hearing was required on Petitioner's

claims that trial counsel was ineffective in failing to present this medical evidence, and in failing to request a continuance when Petitioner was arraigned on the day of trial. Resp. Ex. K.

The Missouri Court of Appeals rejected all of Petitioner's arguments. With respect to the claim based upon trial counsel's failure to elicit testimony from Petitioner's wife about the weekend visits, the appellate court stated as follows:

> [Petitioner's] wife testified at the evidentiary hearing that [Petitioner's] weekend visits usually began on Saturday mornings and sometimes ended on Sundays. But, as found by the motion court, this testimony would not have provided a defense for the entire period. The offenses could have occurred on Friday nights or on Sundays and therefore would not have contradicted [Jones's] or [Wilson's] testimony. Furthermore, the credibility of [Petitioner's] wife's testimony at the evidentiary hearing was for the motion court to determine. The motion court's finding is not clearly erroneous.

Resp. Ex. O at 5-6.

## DISCUSSION

**Procedural Default**

Respondent argues that Petitioner's claims, with the exception of his claims that trial counsel was ineffective for failing to present evidence that he was not at his sister's house during the weekends, and failing to present medical evidence of Petitioner's medical condition during the relevant time period, were procedurally defaulted in state court in that they were not presented to the state appellate court in Petitioner's direct appeal, or on appeal from the denial of post-conviction relief. Respondent argues that federal habeas review of these claims is procedurally barred, because Petitioner has not presented a valid reason to excuse the defaults. This Court agrees. Further, to the extent

11

Petitioner now claims that defense counsel was ineffective for failing to present testimony by Petitioner's step-daughters about his weekend visits, this claim is procedurally barred as well.[2]

Under the doctrine of procedural default,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U .S. 722, 750 (1991). "Cause" under the cause and prejudice test "must be something external to the petitioner, something that cannot fairly be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable. Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* Greer v. Minnesota, 493 F.3d 952, 957-58 (8th Cir. 2007). To show a miscarriage of justice in this context requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 126 S. Ct. 2064, 2077 (2006); *see also* Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

A Missouri inmate procedurally defaults claims which could have been but were not raised on direct appeal, or on appeal from the denial of post-conviction relief.

---

[2] Petitioner, in his federal habeas petition, references "family members," but in his state post-conviction proceedings, Petitioner referenced only the failure to elicit testimony from his wife.

Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006) (holding that Missouri prisoner's claim raised in his pro se Rule 29.15 motion but not raised in the amended motion filed by appointed counsel, or raised on appeal from the denial of that motion, was defaulted) (citing Osborne v. Purkett, 411 F.3d 911, 919-20), *cert. denied*, 126 S. Ct. 1596 (2006)); Moore-El v. Luebbers, 446 F.3d 890, 897-98 (8th Cir.), *cert. denied*, 127 S. Ct. 673 (2006). Here, the claims at issue were not pursued on direct appeal or on post-conviction appeal, and were thus procedurally defaulted. In addition, the claim that defense counsel was generally ineffective for failing to provide a "supported" defense was not presented to the state courts, and was thus procedurally defaulted. See Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994) ("[A] habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review.").

Petitioner's assertion that the default of at least some claims was due to post-conviction counsel's failure to present in the amended post-conviction motion all 78 claims raised by Petitioner in the pro se motion is of no avail. Because there is no constitutional right to an attorney in state post-conviction proceedings, a claim that post-conviction counsel was ineffective cannot establish cause to excuse a procedural default, even when post-conviction counsel was appointed by the state court. Simpson v. Norris, 490 F.3d 1029, 1033-34 (8th Cir. 2007); Interiano, 471 F.3d at 856-57.[3] Nor has

---

[3] To the extent that the petition can be interpreted as asserting that direct appeal counsel's ineffective assistance was the cause for Petitioner's procedural defaults, this claim fails because a claim of ineffective assistance of appellate counsel was not raised in the amended post-conviction motion. *See* Edwards v. Carpenter, 529 U.S. 446, 450-53,

13

Petitioner shown that a miscarriage of justice would occur if the claims were not reviewed. The Court will accordingly turn to consider Petitioner's remaining two claims, which assert ineffective assistance of trial counsel.

**Standard of Review**

Under Anti Terrorist and Effective Death Penalty Act ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived "'at a conclusion opposite to that reached by [the Supreme Court] on a question of law'" or "'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent'" but arrives at the opposite result. Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

---

(2000) (holding that in order to urge ineffective assistance of appellate counsel as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court). And even in the motion to recall the mandate, this claim of ineffective assistance of appellate counsel was not raised by Petitioner.

Williams, 529 U.S. at 413; *see also* Linehan v. Milczark, 315 F.3d 920, 924 (8th Cir. 2003). A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable." Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (holding that under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is *both* wrong *and* unreasonable").

The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Id. Factual findings by the state court "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); § 2254(e)(1). "The standard is demanding but not insatiable; . . . deference does not by definition preclude relief." Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

**Trial Counsel's Failure to Introduce Medical Evidence of Petitioner's Medical Condition**

Petitioner claims that his constitutional right to the effective assistance of trial counsel was violated by counsel's failure to present medical expert testimony and records of Petitioner's medical condition during the time in which the crimes of conviction were committed. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different. Id. at 688.

Moreover, in the context of a § 2254 action, a petitioner

> "must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner."

Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoting Bell v. Cone, 535 U.S. 685, 698-99 (2002)). "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories. Judicial review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Cagle v. Norris, 474 F.3d 1090, 1097 (8th Cir. 2007) (citations omitted).

Upon review of the record, the Court concludes that the state courts' adjudication of Petitioner's ineffective assistance of counsel claim regarding the medical records, is not contrary to, and does not involve an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented at trial. As the state courts noted, evidence of Petitioner's impotency was introduced through his wife's testimony, and in any event, under Missouri law, such evidence is not a defense to rape and sodomy. *See* Alexander v. Armontrout, 985 F.2d 976, 978 (8th Cir. 1993) (holding that Missouri prisoner convicted of rape and sodomy was not denied effective assistance of trial counsel for counsel's failure to obtain and introduce medical records supporting petitioner's testimony that he was impotent when the crimes were committed, because under Missouri law, impotency was not a defense to rape and

sodomy).[4]

**Trial Counsel's Failure to Elicit Testimony from Petitioner's Wife about Petitioner's Weekend Visits**

Petitioner asserts that his trial counsel was constitutionally ineffective for failing to elicit testimony from Petitioner's wife about his weekend visits to her during the relevant time period. Because Petitioner's defense counsel did not explain why he did not do so, it cannot be said that this was a matter of trial strategy. In addition, the reasoning of the motion court on this issue in the initial order of February 19, 1999, is problematic in several respects. Petitioner did not testify at trial that Day consented to sexual relations with him; rather he denied that he sexually molested her, and rested his defense on the theory that the victims were lying, having been pressured to do so. Thus an alibi defense would not have been "destructive" to the defense theory of the case. Further, the court's observation that Petitioner's wife's testimony on cross-examination provided "the essence of the alibi defense" is only slightly supported by the record. Moreover, the motion court's reasoning regarding trial counsel's possible legitimate reasons for not developing Petitioner's wife's testimony about the weekend visits also eludes this Court.

As noted above, however, the post-conviction motion court re-analyzed this issue following the evidentiary hearing. This time the motion court's denial of Petitioner's ineffective assistance claim, and the state appellate court's affirmance of the denial, was based on the premise that Petitioner's wife's testimony would not have contradicted the testimony of Wilson and Jones that crimes against them were committed on the weekends.

---

[4] The Court notes that here, with regard to the rape, Day simply testified that Petitioner placed his penis inside her vagina without her consent. Resp. Ex. A1 at 59.

17

In addition, the motion court found that Petitioner's wife's testimony at the evidentiary hearing was not entirely credible, and the appellate court concluded that this finding was not clearly erroneous. Upon review of the record, this Court cannot say that this adjudication of the claim at issue was factually or legally unreasonable. Issues of the credibility of witnesses at a post-conviction hearing are left to the state courts. Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2256 (2007). Furthermore, even crediting the evidence of Petitioner and his wife at the post-conviction hearing, there was no inherent inconsistency between this testimony and that of Jones and Wilson, as noted by the state courts.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to habeas corpus relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). *See* Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a Certificate of Appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Pietro Bieser for habeas corpus relief is **DENIED**.

A separate Judgment shall accompany this Memorandum and Order.

                                                                         /s/ Audrey G. Fleissig
                                                                         AUDREY G. FLEISSIG
                                                                         UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2007.